DWIGHT v. GIBB et al.

(Supreme Court, Appellate Division, First Department. June 2, 1911.)

1. DEPOSITIONS (§ 8*)—COMMISSION—ISSUANCE.

A commission will not issue to obtain evidence which will be inadmissible at the trial.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. § 8; Dec. Dig. § 8.*]

2. TRUSTS (§ 305*)—TESTAMENTARY TRUSTEE—ACCOUNTING—ISSUES.

Where a testator, in creating a trust described two of the beneficiaries as his daughters, and provided for them as if they were his legitimate children, and the complaint of the substituted trustee seeking to account for the trust did not allege even by inference that the two beneficiaries were not the legitimate children of testator except by the legal conclusion that the substituted trustee was the only legal representative of testator, there was no issue involving the legitimacy of the two beneficiaries, and the commission would not issue to obtain evidence to prove their illegitimacy.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 305.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. TRUSTS (§ 270*)—TESTAMENTARY TRUSTEES—OBLIGATION OF TRUSTEE.**

A substituted testamentary trustee must carry out testator's intention as ascertained by the will; and where testator described beneficiaries as his daughters, and makes provision for them as if they were his legitimate children, the trustee may not question their legitimacy.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 379; Dec. Dig. § 270.*]

**4. WILLS (§ 497*)—CONSTRUCTION—CHILDREN.**

Where it appears from the will by express designation or by necessary implication that the intended objects of testator's bounty are illegitimate children, they will take under the description of children.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1085; Dec. Dig. § 497.*]

**5. WILLS (§ 511*)—CONSTRUCTION—"LEGAL REPRESENTATIVES."**

Testator created a testamentary trust, and provided that the income thereof should be applied to the use of daughters named and a son named, and declared that on the death of the daughters, respectively, the principal held in trust for the daughter dying should be transferred to the children of the deceased daughter, and, in default of children, the property should go to the other children named in the will and to their legal representatives. *Held*, that the words "legal representatives" meant lineal descendants, though the daughters were illegitimate children of testator.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1107; Dec. Dig. § 511.*

For other definitions, see Words and Phrases, vol. 5, pp. 4070–4079; vol. 8, p. 7704.]

**6. APPEAL AND ERROR (§ 151*)—PARTY ENTITLED TO APPEAL—PERSONAL AND REPRESENTATIVE CAPACITY.**

Under Code Civ. Proc. § 1294, authorizing an appeal by the party aggrieved, except where the judgment was rendered on his default, a person made a defendant in his individual capacity in an action brought by him in his representative capacity may not appeal in his individual capacity from an order made in default of his pleading in his individual capacity.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 947–951; Dec. Dig. § 151.*]

Scott and Miller, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Stanley Dwight, as substituted trustee of the will of Timothy Dwight, deceased, against Harrison Jeffray Gibb and others. From an order denying a motion for a commission to take testimony, defendant Stanley Dwight individually appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Chester A. Jayne, for appellant.
John A. Garver, for respondents.

McLAUGHLIN, J. Timothy Dwight died in 1857, leaving a last will and testament, and a codicil thereto, which were probated in 1858. By his will he directed that his residuary estate be divided into six parts, one of which he gave to his widow and one to his son Timothy. The remaining four parts were given in trust, the income of three of them to be applied, respectively, to the use of his three daughters, Caroline, Joanna, and Grace, and the income of the fourth part

to the use of his son Stanley. Upon the death of each daughter, the principal of the trust fund so held for her benefit he disposed of as follows:

"Upon the decease of my said daughters respectively, to pay over, transfer and deliver the principal of the part aforesaid so holden in trust for the use of the daughter so respectively deceased to the child or children of such deceased daughter respectively; and in default of such child or children, then to my other children named in this will and to their legal representatives in equal proportions."

The trust for Stanley terminated when he was 21 years of age. The trusts for Caroline and Joanna were terminated by their respective deaths, and the principal of their shares passed to their respective issue. The trust for Grace terminated by her death, which occurred in September, 1909, without issue. Timothy died in 1899, unmarried, and without issue. The plaintiff, as substituted trustee under the will of his father, seeks by this action to account for the trust fund held by him for the benefit of Grace, and for a distribution of the same. The will and codicil are annexed to and made a part of the complaint. The plaintiff in his individual capacity was made a party defendant, but did not answer. Certain other defendants, including the respondents, interposed answers. After issue had been joined, the plaintiff moved for a commission to take testimony outside the state, to be used upon the trial, which it was claimed would establish the fact that Caroline and Joanna were not legitimate daughters of the testators. The motion was denied, as appears from the memorandum of the learned justice who heard the same, on the ground that such testimony would be inadmissible at the trial. The plaintiff in his individual capacity appeals, contending that such testimony would be admissible at the trial. This contention is based upon the proposition that the words "legal representatives" in the clause of the will above quoted mean only legitimate next of kin, and, if this be correct, then the conclusion necessarily follows that the principal of the trust fund given for the benefit of the daughter Grace should be divided into four parts, one of which should go to the surviving son Stanley, one to the lineal descendants of each of the alleged illegitimate daughters, and one to the legitimate next of kin of the son Timothy; that is, to the son Stanley.

[1] If the testimony sought to be taken would be inadmissible at the trial, then the motion was properly denied. A commission will not issue to obtain evidence which cannot be used at the trial. Schuler v. Woodward, 137 App. Div. 576, 122 N. Y. Supp. 404. I think such testimony would be inadmissible for the following reasons:

[2] First. There is no issue raised by the pleadings as to the legitimacy of the daughters Caroline and Joanna. The will of the testator is made a part of the complaint. By it the testator describes Caroline and Joanna as his daughters. He gives them his surname, and treats them in precisely the same way as his conceded legitimate children. There is nothing in the will or in the complaint itself which indicates, even by inference, that Caroline and Joanna were not legitimate daughters of the testator, unless it be the allegation that the plaintiff is the

only legal representative of Timothy, which is not the statement of a fact, but a mere conclusion of law which does not raise an issue.

[3] Second. I do not think the plaintiff is in a position to raise such issue or question in any way the legitimacy of Caroline and Joanna. He brings the action as substituted trustee of his father's will, and it is his duty as such trustee to carry out what his father intended. This he is legally bound to do, if such intent can be ascertained. It is not part of his duty to prove that Caroline and Joanna were illegitimates. His father stated them to be his daughters, and this is sufficient for the plaintiff. He need go no further because every legal presumption is in favor of their legitimacy. "The existence of such a presumption" says Judge Martin in Matter of Matthews, 153 N. Y. 443, 47 N. E. 901, "is in consonance with every correct sense of propriety and justice. Any other rule would be fraught with danger and produce immeasurable uncertainty. Property rights would be rendered doubtful and the fair fame of their ancestors might be destroyed by the cupidity of remote heirs and next of kin. There might be others who would be willing to dishonor their ancestors and bastardize their relatives to increase their patrimony." The testator, of course, had a right to dispose of his property as he saw fit. He could treat his legitimate and illegitimate children alike. Here, it is perfectly obvious that he intended to treat Caroline and Joanna in precisely the same manner as he did his daughter Grace. He made no distinction whatever between them. Each was to receive an equal part of his estate for life, and, upon her death, the principal was to go to her children if she had any. The testator, so far as he could by words used in his will, excluded the possibility of any question being raised as to the legitimacy of any of his children. He intended they should all be treated as legitimates in the distribution of the trust estate, and a trustee appointed to carry out his intent cannot be heard to assert the contrary. His intention being clear, effect must be given to it. Robinson v. Martin, 200 N. Y. 159, 93 N. E. 488. The test is not what was the status at law of Caroline and Joanna, but how each was "treated in the nomenclature or vocabulary of the testator." Dodin v. Dodin, 16 App. Div. 42, 44 N. Y. Supp. 800, affirmed 162 N. Y. 635, 57 N. E. 1108.

[4] In Gelston v. Shields, 16 Hun, 143, affirmed 78 N. Y. 275, it was held that, if a man clearly indicates in his will whom he means by his "wife," it is unnecessary to consider whether she was so in fact, and that "prima facie the word 'children' means legitimate children. But, when it appears from the will itself by express designation or by necessary implication that the intended objects of the testator's bounty are illegitimate children, they will take under the description of 'children.' 'Necessary implication,' said Lord Eldon in Wilkinson v. Adams, 1 V. & B. 422, 'means not natural necessity, but so strong a probability of intention that an intention contrary to that which is imputed to the testator cannot be supposed.' "

[5] If the foregoing views be correct as to the testator's intent, then it seems to me the question presented is not difficult of solution. The usual and ordinary meaning of the words "legal representatives"

is executors or administrators.  Griswold v. Sawyer, 125 N. Y. 411, 26 N. E. 464; Sulz v. Mutual Reserve Fund Life Ass'n, 145 N. Y. 563, 40 N. E. 242, 28 L. R. A. 379; Geoffroy v. Gilbert, 5 App. Div. 98, 38 N. Y. Supp. 643, affirmed 154 N. Y. 741, 49 N. E. 1097. But the testator did not use these words in that meaning.  This both of the parties seem to concede, the plaintiff necessarily so, because he does not allege in his complaint whether the son Timothy died testate or intestate, and he has not made his executor or administrator a party. The testator used these words, as it seems to me, in the same sense they are used in the statute of distributions (Decedents' Estate Law [Consol. Laws 1909, c. 13] § 98)—lineal descendants.  The testator was providing for the final distribution of a fund which he had given in trust; and, in the absence of words indicating an intent to the contrary, it must be presumed that he used those words in the same sense that they are used in the statute.  Greenwood v. Holbrook, 111 N. Y. 465, 18 N. E. 711.  And, indeed, in this connection, it is to be noted that the plaintiff himself adopts this meaning so far as Caroline and Joanna are concerned, because he makes their lineal descendants parties defendant.  They could only be made parties defendant upon the theory that Caroline and Joanna, if living, would each be entitled to one-fourth of the fund, and this one-fourth in each case has passed to the lineal descendants by representation.

[6] Third. The plaintiff, as we have already seen, made himself a defendant in his individual capacity.  He made default in pleading, as he did upon the motion which resulted in the order appealed from. Notwithstanding that fact he appeals individually.  His appeal is ineffectual because he is not in a position to question the validity of the order.  Section 1294, Code Civ. Proc.; Matter of Jones Lumber Co. v. Fulton, 123 App. Div. 386, 107 N. Y. Supp. 942.

The order appealed from therefore should be affirmed, with $10 costs and disbursements.

INGRAHAM, P. J., and DOWLING, J., concur.  SCOTT and MILLER, JJ., dissent.

