NEW YORK LIFE INSURANCE AND TRUST COMPANY, as Trustee under the Will of JABEZ A. BOSTWICK, Deceased, Respondent, *v.* EGERTON L. WINTHROP, JR., as Executor of EVELYN B. VORONOFF, Deceased, et al., Appellants, and FARMERS LOAN AND TRUST COMPANY, as Executor of HELEN C. BOSTWICK, Deceased, et al., Respondents.

Will — trust — direction to pay income of trust estate to testator's widow and daughter during life and upon their death to convey it to the lawful issue of said daughter or in default thereof, to the next of kin of the daughter — such gift contingent and did not vest until death of both wife and daughter — the daughter having died without issue, the trust estate must be divided among the daughter's next of kin, living at her death, as provided by the Statute of Distribution.

1. Testator devised and bequeathed a specified part of his estate to a trustee to pay the income thereof to his wife during life and " upon her death to pay the same " to a designated daughter during

life and " upon the death of his said wife and daughter to convey, assign and deliver the said estate, real and personal, so held in trust to the lawful issue " of said daughter " share and share alike or in default of such issue to the next of kin " of said daughter. The daughter died first without issue and her mother, testator's widow, died some years later. It was then the duty of the trustee to distribute the estate so held in trust among the next of kin of the daughter. Under the will, construed to carry out the intention of testator, the gift to the next of kin was, up to the death of testator's wife and daughter, contingent and defeasible, a gift to which survivorship at some time in the future was annexed as a condition, and, since the testator did not intend that the interests of issue, if any, should vest as soon as they were born, the vesting must be held to have been postponed until the trust was at an end. Being postponed for issue, it was postponed for next of kin, and the next of kin are to be ascertained as if the daughter had lived up to the time prescribed for distribution.

2. It being apparent that it was the intention of the testator that the vesting of the ultimate gifts should be held in abeyance until the termination of the trust and that the trustees should then adapt and proportion them to the conditions then arising it must be determined whether distribution is to be made *per capita* or *per stirpes*. A gift to " heirs " or " next of kin " is the same in meaning and effect as one to " legal heirs " or " legal next of kin " and one as much as the other imports a reference to the Statute of Distribution. Therefore, when testator provided that upon the death of his wife and daughter the trust estate should be divided, if the daughter died without issue, among the " next of kin " of his daughter, this provision meant and had the same effect, as if the words " legal next of kin " had been used so that the next of kin entitled to share the trust estate are those designated by the Statute of Distribution.

3. Testator's daughter having died without issue but leaving, at the termination of the trust, as her next of kin, her sister and five children of a deceased brother, all of whom are living, it follows that under the Statute of Distribution the sister is entitled to one-half of the trust estate and the five children of the deceased brother to the other half of the trust estate to be divided between them equally, share and share alike.

*N. Y. Life Insurance & Trust Co. v. Winthrop,* 204 App. Div. 803, reversed.

(Argued October 24, 1923; decided November 20, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department,

entered April 9, 1923, reversing a judgment entered upon the report of a referee.

*Frederick W. Stelle, Arthur E. Pettit* and *Robinson K. Bissell* for Edgerton L. Winthrop, Jr., as executor, appellant. The words " next of kin of said Mrs. Morrell " refer to those persons answering such description who were living at the date of the death of Mrs. Bostwick, April 27, 1920; such was the intent of the testator as is shown by the scheme of the will and by the use of the words in connection therewith " and upon the death of my wife and daughter to convey, assign and deliver." (*Cammann* v. *Bailey,* 210 N. Y. 19; *Matter of Ossman* v. *Von Roemer,* 221 N. Y. 381; *Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573; *Matter of Lamb,* 182 App. Div. 180; 224 N. Y. 577; *Matter of Gee,* 201 App. Div. 540; *Connelly* v. *O'Brien,* 166 N. Y. 406; *Goebel* v. *Wolf,* 113 N. Y. 405; *Canfield* v. *Fallon,* 43 App. Div. 561; *Matter of Embree,* 9 App. Div. 602.) Even if it be held that the above considerations do not show that the testator intended the remainders to be contingent a well-settled rule of construction nevertheless demands that the remainders in the instant case be construed as contingent. (*Roosa* v. *Harrington,* 171 N. Y. 341; *Wright* v. *Wright,* 225 N. Y. 329; *Matter of Pulis,* 220 N. Y. 196; *Dickerson* v. *Sheehy,* 156 App. Div. 101; 209 N. Y. 592; *Salter* v. *Drowne,* 205 N. Y. 204; *Schlereth* v. *Schlereth,* 173 N. Y. 444; *Matter of Crane,* 164 N. Y. 71; *Matter of Baer,* 147 N. Y. 348; *Delaney* v. *McCormack,* 88 N. Y. 174; *Smith* v. *Edwards,* 88 N. Y. 92; *U. S. Trust Co.* v. *Nathan,* 112 Misc. Rep. 502, 507; 196 App. Div. 126; 233 N. Y. 505.) The distribution of the fund to the next of kin of Mrs. Morrell should be *per stirpes* and not *per capita.* (*Soper* v. *Brown,* 136 N. Y. 244; *Schmidt* v. *Jewett,* 195 N. Y. 486; *Matter of Union Trust Co.,* 170 App. Div. 176; *Petry* v. *Petry,* 186 App. Div. 738; 227 N. Y. 621; *Matter of Durant,* 231 N. Y. 41; *Cogan* v. *McCabe,* 23 Misc. Rep. 739;

*Matter of Fidelity Trust & Guaranty Co.*, 57 App. Div. 532; *Erdman* v. *Meyer*, 52 Misc. Rep. 256; *Dwight* v. *Gibb*, 150 App. Div. 573; *Slawson* v. *Lynch*, 43 Barb. 147; *Matter of Fay*, 77 Misc. Rep. 514; *Armstrong* v. *Galusha*, 43 App. Div. 253; *Woodward* v. *James*, 115 N. Y. 346; *Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125.) There is no presumption that the words " next of kin " were used in their primary and technical meaning when the only gift to such next of kin is contained in a direction to divide and pay over at a future time. (*Johnson* v. *Brasington*, 156 N. Y. 181; *New York Life Ins. & Trust Co.* v. *Hoyt*, 161 N. Y. 1; *Arnot* v. *Arnot*, 75 App. Div. 230; *Mundt* v. *Glokner*, 26 App. Div. 123; *Simonson* v. *Waller*, 9 App. Div. 503; *U. S. Trust Co.* v. *Taylor*, 193 App. Div. 153; 232 N. Y. 609; *Matter of Bump*, 234 N. Y. 60; *Matter of Lake*, 109 Misc. Rep. 287; *Wallace* v. *Diehl*, 202 N. Y. 156; *Beers* v. *Grant*, 110 App. Div. 152; 185 N. Y. 533; *Salter* v. *Drowne*, 141 App. Div. 352; 205 N. Y. 204; *Delaney* v. *McCormack*, 88 N. Y. 174; *Matter of Baer*, 147 N. Y. 348; *Cogan* v. *McCabe*, 23 Misc. Rep. 739.)

*Albert Ritchie* for New Rochelle Trust Company et al., as guardians, appellants. The intention of the testator would be carried out by holding that the class to take was not to be determined until the time fixed for distribution. (*Matter of Buechner*, 226 N. Y. 440; *Robinson* v. *Martin*, 200 N. Y. 159; *Matter of James*, 146 N. Y. 78; *Mullarky* v. *Sullivan*, 136 N. Y. 227; *Salter* v. *Drowne*, 205 N. Y. 204; *Bergman* v. *Lord*, 194 N. Y. 70; *Delaney* v. *McCormack*, 88 N. Y. 174; *Hadcox* v. *Cody*, 213 N. Y. 570; *Delafield* v. *Shipman*, 103 N. Y. 463; *Lese* v. *Miller*, 71 App. Div. 195.) The plain implication of the will, as well as the presumption of law in this state, is that the class described in the will as the next of kin of Mrs. Morrell take *per capita* and not *per stirpes*. (*Woodward* v. *James*, 115 N. Y. 346; *Matter of Barker*, 230 N. Y. 364; *Soper* v. *Brown*, 136 N. Y. 245; *Schmidt* v. *Jewett*, 195 N. Y. 486;

*Petry* v. *Petry,* 186 App. Div. 738; 227 N. Y. 621; *Matter of Fay,* 77 Misc. Rep. 514; *Cogan* v. *McCabe,* 23 Misc. Rep. 739; *Matter of Fidelity Trust & Guaranty Co.,* 57 App. Div. 532; *Dwight* v. *Gibb,* 150 App. Div. 573; *Ferrer* v. *Pyne,* 81 N. Y. 284; *Armstrong* v. *Galusha,* 43 App. Div. 253.)

*James A. Dilkes* for Albert C. Bostwick et al., appellants. The decision of this court construing the third clause of the will of this testator is controlling in the construction of the first clause and makes a decision necessary that the next of kin of Nellie Bostwick Morrell be determined as of the date of the death of Helen C. Bostwick. (*Matter of Baer,* 147 N. Y. 348; *Matter of Evans,* 234 N. Y. 42.) The general scheme of the will clearly evidences the intention to bequeath the remainder of the trust fund to Mrs. Morrell's next of kin as constituted at the end of all the precedent life estates. (*U. S. Trust Co.* v. *Nathan,* 196 App. Div. 126; 233 N. Y. 505.)

*Charles Angulo* for respondent. The words "next of kin" must be presumed to have been used by the testator in their technical sense. (*Tillman* v. *Davis,* 95 N. Y. 17; *Johnson* v. *Brasington,* 156 N. Y. 181; *U. S. Trust Company* v. *Taylor,* 193 App. Div. 153; 232 N. Y. 609; Alexander on Wills, § 855; *Holloway* v. *Holloway,* 5 Ves. 399; *Stokes* v. *Van Wyck,* 83 Va. 724; Theobald on Wills [7th ed.], 340; *Matter of Bump,* 234 N. Y. 60; *Wallace* v. *Diehl,* 202 N. Y. 156; Theobold on Law of Wills [5th ed.], 313, par. 8; *Gundry* v. *Pinniger,* 1 De G., M. & G. 502; *Jacobs* v. *Jacobs,* 16 B. 557; *Markham* v. *Ivatt,* 20 B. 579.) The interests of the next of kin of Mrs. Morrell were not contingent upon their surviving Mrs. Bostwick. (*Goebel* v. *Wolf,* 113 N. Y. 405; *Connelly* v. *O'Brien,* 166 N. Y. 406; *Scott* v. *Guernsey,* 48 N. Y. 106; *Low* v. *Harmony,* 72 N. Y. 408; *Matter of Ossman* v. *Von Roemer,* 221 N. Y. 381.)

7

*Charles S. McVeigh* for Marion C. De Pret, respondent. Mr. Bostwick's will indicates that it was his intention that the date of Mrs. Morrell's death should control. (*Hawley* v. *James,* 5 Paige, 466; *Lawrence* v. *Bayard,* 7 Paige, 70.) The words " to the next of kin of said Mrs. Morrell " were used in their primary and technical sense and described those persons who were her next of kin on her death. (*Arnot* v. *Arnot,* 75 App. Div. 230; *Mundt* v. *Glokner,* 26 App. Div. 123; *Salter* v. *Drowne,* 205 N. Y. 204; *N. Y. L. Ins. & Trust Co.* v. *Hoyt,* 161 N. Y. 1.) Upon the death of Mrs. Morrell each of her next of kin acquired an absolute vested remainder in the trust estate subject only to Mrs. Bostwick's life estate. (*Hennesey* v. *Patterson,* 85 N. Y. 91; *Matter of Baer,* 147 N. Y. 348; *Salter* v. *Drowne,* 205 N. Y. 204; *Moore* v. *Littel,* 41 N. Y. 66; *Dougherty* v. *Thompson,* 167 N. Y. 472; *Roosa* v. *Harrington,* 171 N. Y. 341; *Losey* v. *Stanley,* 147 N. Y. 560; *Campbell* v. *Siokes,* 142 N. Y. 23; *Matter of Embree,* 9 App. Div. 602; 154 N. Y. 778; *Loder* v. *Hatfield,* 71 N. Y. 92.) The law favors the vesting of estates and endeavors to defeat the disinheritance of remaindermen because of their death before that of the life tenant. (*Goebel* v. *Wolf,* 113 N. Y. 405; *Bowditch* v. *Ayrault,* 138 N. Y. 222; *Hersee* v. *Simpson,* 154 N. Y. 496.)

*Charles Green Smith* and *Lawrence Atterbury* for Marie S. Gilbert, as executrix, respondent. Testator's intent must be studied as of the time he made his will. So studied, this disposition is clear. (*Matter of Hoffman,* 201 N. Y. 247; *Morris* v. *Sickly,* 133 N. Y. 456; *Matter of Tamargo,* 220 N. Y. 225; *Matter of Bostwick,* 233 N. Y. 242; *Williams* v. *Jones,* 166 N. Y. 522; *Matter of Crane,* 164 N. Y. 71; *Delaney* v. *McCormack,* 88 N. Y. 174; *Delafield* v. *Shipman,* 103 N. Y. 463; *Matter of Russell,* 168 N. Y. 169; *Matter of Lamb,* 182 App. Div. 183; 224 N. Y. 597.) Testator intended no discrimination between

the cases of the death of son and of daughter without issue as regards his gift over to their respective next of kin. He did not use the words " next of kin " differently in the three trusts. He cannot have intended " next of kin " to include the widow in the third subdivision, if she should outlive Albert, and to exclude her in the first and second trusts if she should outlive a daughter. ( *U. S. Trust Co.* v. *Taylor,* 232 N. Y. 609; *Canfield* v. *Fallon,* 43 App. Div. 561; *Campbell* v. *Stokes,* 142 N. Y. 23; *Browne* v. *Spring,* 241 Mass. 565; *Upham* v. *Parker,* 220 Mass. 454; *Gundry* v. *Pinninger,* 1 De G., M. & G. 502.) In the substituted gift over, upon the default of issue, " to the next of kin of Mrs. Morrell " the words were used in their primary sense, which is also their ordinary sense. ( *Keteltas* v. *Keteltas,* 72 N. Y. 312; *N. Y. L. Ins. Co.* v. *Hoyt,* 161 N. Y. 1; *Wallace* v. *Diehl,* 202 N. Y. 156; *Tuttle* v. *Woolworth,* 62 N. J. Eq. 532; *Bullock* v. *Downes,* 9 H. L. Cas. 1; *Salter* v. *Drowne,* 205 N. Y. 204.) The statute is controlling. Under it Nellie's next of kin were vested in remainder upon her death without issue. They were vested, likewise, under the rule of construction that the letting in of a precedent life estate will not postpone vesting. ( *U. S. Trust Co.* v. *Taylor,* 193 App. Div. 153; 232 N. Y. 609; *Canfield* v. *Fallon,* 43 App. Div. 561; 161 N. Y. 623; *Matter of Embree,* 9 App. Div. 602; 154 N. Y. 778; *Matter of Brown,* 154 N. Y. 321; *Goebel* v. *Wolf,* 113 N. Y. 405; *Matter of Young,* 145 N. Y. 535; *Matter of Tienken,* 131 N. Y. 391; *Runyon* v. *Grubb,* 119 App. Div. 17; 192 N. Y. 589; *Roosa* v. *Harrington,* 171 N. Y. 341; *Daugherty* v. *Thompson,* 167 N. Y. 472, 485; *Murtha* v. *Wilcox,* 47 App. Div. 526.)

*Garrett A. Brownback* for Evelyn Francis et al., respondents. Testator's intent must be studied as of the time he made his will. (*Matter of Hoffman,* 201 N. Y. 247; *Morris* v. *Sickly,* 133 N. Y. 456; *Matter of Tamargo,*

220 N. Y. 225; *Teelte* v. *Hathaway,* 129 Mass. 164; *Byrnes* v. *Stillwell,* 103 N. Y. 453; *Campbell* v. *Stokes,* 142 N. Y. 23; *Canfield* v. *Fallon,* 43 App. Div. 561; 161 N. Y. 623; *Goebel* v. *Wolf,* 113 N. Y. 405; *Matter of Brown,* 154 N. Y. 313; *Hersee* v. *Simpson,* 154 N. Y. 500.)   The words " next of kin " were used by the testator in their technical and primary sense to describe Mrs. Morrell's real next of kin at her death. (*Seifferth* v. *Badham,* 9 Beav. 370; *Whall* v. *Converse,* 15 N. E. Rep. 360; *Matter of Lake,* 109 Misc. Rep. 287; *Hersee* v. *Simpson,* 154 N. Y. 496; *Wallace* v. *Diehl,* 202 N. Y. 166; *Gundry* v. *Pinninger,* 14 Beav. 94; *Welch* v. *Blanchard,* 208 Mass. 523.)   The next of kin of Nellie Morrell became vested in the remainder at her death subject to Mrs. Bostwick's life estate. (*U. S. Trust Co.* v. *Taylor,* 193 App. Div. 159; *Matter of Embree,* 9 App. Div. 602; 154 N. Y. 778; *Matter of Brown,* 154 N. Y. 321; *Canfield* v. *Fallon,* 43 App. Div. 561; *Lewis* v. *Howe,* 174 N. Y. 340; *Matter of Gee,* 201 App. Div. 540; *Connelly* v. *O'Brien,* 166 N. Y. 406; *Hersee* v. *Simpson,* 154 N. Y. 496; *Livingston* v. *Greene,* 52 N. Y. 118; *Corse* v. *Chapman,* 153 N. Y. 466, 471.)

Cardozo, J.   The action is brought for the settlement of the accounts of a trustee and for the construction of a will.

Jabez A. Bostwick, who died in August, 1892, divided his residuary estate into three equal parts.

One of " said equal third parts " he devised and bequeathed to the New York Life Insurance and Trust Company in trust to pay the income thereof to his wife Helen C. Bostwick during life, and " upon her death to pay the same " to his daughter Mrs. Nellie Bostwick Morrell during life, and upon the death of his " said wife and daughter to convey, assign and deliver the said estate real and personal so held in trust to the lawful issue of Mrs. Nellie Bostwick Morrell share and share alike, or

1923.]                    Opinion, per Cardozo, J.                    [237 N. Y. 93]

in default of such issue to the next of kin of Mrs. Morrell."

A second share was given to another trustee upon like trusts, but for the benefit of another daughter.

A third share, disposed of upon trusts for the benefit of a son, was the subject of a litigation recently before us (*Matter of Bostwick*, 236 N. Y. 242). The trusts for the son were substantially the same as those for the daughters except that one-half of the principal was to be paid to him when he attained the age of twenty-one. We held that his right to this half, " whether it be classified as vested or contingent, was subject to be divested by his death before his mother " (236 N. Y. 242, at p. 245). " The trustee at the appointed time was not merely to convey and assign. It was also to deliver. Conveyance and delivery were impossible while the trust for the mother was outstanding " (p. 246). " Majority did not give an indefeasible title to the half without survivorship at the end of the primary trust, and survivorship did not give it without the attainment of majority " (p. 246).

The first of the three shares is the subject-matter of this action. Nellie Bostwick Morrell died without issue in January, 1906. Her mother, the testator's widow, died in April, 1920. The trustee was then under a duty to distribute the estate so held in trust among the next of kin of Mrs. Morrell. We are to determine the point of time which the testator had in mind as the one for the ascertainment of the class. On the one hand it is asserted that the next of kin in being at the death of Mrs. Morrell acquired a title that was indefeasible though they died before the end of the trust and so before the date of distribution. This was the view of the Appellate Division. On the other hand, it is asserted that the class was to be ascertained when there was a duty to convey and deliver, and that survivorship at that time was one of the conditions of the gift.

Much that was said in construing the trust for the benefit of the son is applicable here. The testator was mindful of the possibility that the daughter might die before the wife. Accordingly, he was careful to provide that only upon the death of both —" upon the death of my said wife and daughter "— was the trustee to convey and deliver the subject-matter of the trust. The mandate is to distribute among issue, and " in default of such issue " among next of kin. But in default of issue when? It happens that none were born. Plainly, if any had been born, their interests would have been defeasible, at least until their mother's death. This, indeed, is conceded by counsel for respondents. The very provision for the substitution of another class, the class of next of kin, is a token that survivorship was thought of as a condition of the gift (*Salter* v. *Drowne*, 205 N. Y. 204, 213; *Bowman* v. *Bowman*, 1899 A. C. 518, 523, 526). No doubt, it would have been possible by appropriate words, as, for example, by words of direct gift, coupled, it may be, with other tokens of intention (*Matter of Bump*, 234 N. Y. 60), to clothe the issue, if any, with an indefeasible interest, which would have passed to their own successors in title, though they died before their mother. That is not what the testator did. We deal, therefore, with a gift which, at least up to a certain point, was contingent and defeasible, a gift to which survivorship at some time in the future was annexed as a condition. Since a contingency existed, since the testator did not intend that the interests of issue should vest as soon as they were born, his expectation must have been that the vesting would be postponed until the trust was at an end (*Bowman* v. *Bowman, supra; Young* v. *Robertson*, 4 Macq. 314, 319, 320; *Vincent* v. *Newhouse*, 83 N. Y. 505, 511). If it was postponed till then for issue, it was postponed for next of kin.

Whether the same construction would be appropriate if the ultimate remainder had been given, not to the

next of kin of the daughter, but to those of the testator, we need not now determine. Such a gift is more readily interpreted as a declaration that the law shall take its course, that the estate shall be disposed of as if a will had not been made (*Matter of Bump, supra; Whall* v. *Converse,* 146 Mass. 345, 348; cf. 2 Jarman Wills, 138). Distinctions are also drawn, how effectively we need not say, between a gift to next of kin in substitution for another class, and a gift to next of kin as primary donees. At present, we confine ourselves to the holding that the point of time which fixes the ascertainment of the class of issue and the vesting of their interests, is the one to which we must look in defining the substituted class described as next of kin (*Hutchinson* v. *National Refuges for Homeless & Destitute Children,* 1920 A. C. 794). When we speak in this connection of the vesting of an interest, we mean, of course, a vesting that is absolute and final. The statutory definition of vested and contingent estates sheds little light upon the problem, for an estate may be vested within the definition of the statute, though defeasible by death before the moment of division (*Moore* v. *Littel,* 41 N. Y. 66; *Campbell* v. *Stokes,* 142 N. Y. 23, 30; *Clowe* v. *Seavey,* 208 N. Y. 496, 502; *Doctor* v. *Hughes,* 225 N. Y. 305, 310). The only significant distinction for the purpose now in view is between an estate that is absolute and one subject to conditions (*Matter of Curtis,* 142 N. Y. 219, 223; *Matter of Seaman,* 147 N. Y. 69, 75).

Survivorship being a condition, we hold that it is survivorship at the time of distribution (*Vincent* v. *Newhouse, supra; Teed* v. *Morton,* 60 N. Y. 502; *Miller* v. *McBlain,* 98 N. Y. 517; *Bowman* v. *Bowman, supra; Young* v. *Robertson, supra;* 2 Jarman, Wills, pp. 733, 734, 736; 28 Halsbury's Laws of England, p. 725, § 1351). We are not blind to the fact that other readings of the will are possible and plausible. In such a situation, the canon of construction which distinguishes between a

direct gift and one through the medium of a mandate to deliver and convey may fairly turn the scale (*Matter of Bostwick, supra; Matter of Baer,* 147 N. Y. 348; *Salter v. Drowne, supra,* at p. 215; *Fulton Trust Co. v. Phillips,* 218 N. Y. 573, 583; *Wright v. Wright,* 225 N. Y. 329). A faint suggestion is in the briefs that the gift to next of kin, even though contingent upon survivorship at the date of distribution, must be confined, subject to that contingency, to those who were next of kin at the death of Mrs. Morrell, the person named as ancestor, with the result that the class might thereafter be diminished, but could not be enlarged (*Brook v. Whitton,* 1910, 1 Ch. 278). This construction, even if it could otherwise be accepted, becomes inadmissible when we consider that the next of kin are to take in substitution for the issue. Issue living at the daughter's death, had there been any, would themselves have been next of kin, if the class of next of kin was to be determined at that time. The result would be that in the event of their death before the trust was ended, the substitutionary gift would fail. That is not what the testator meant. The next of kin were to be ascertained as if the daughter had lived up to the time prescribed for distribution (*Hutchinson v. National Refuges for Homeless & Destitute Children, supra; Matter of Mellish,* 1916, 1 Ch. 562; *Salter v. Drowne, supra*). "Where a testator gives property in trust for the benefit of the persons who at a time subsequent to his own death shall by virtue of the Statute of Distributions be his next of kin, the class is an artificial class to be ascertained on the hypothesis that the testator had lived up to and died at the subsequent period of time" (Per Viscount Finlay in *Hutchinson v. National Refuges, etc., supra,* at p. 805). The will, when read in its totality, is instinct with the desire to hold the ultimate gifts in abeyance until the termination of the trust, and thereupon to adapt and proportion them to the conditions then existing. We have already traced

this purpose in the provisions for the son (*Matter of Bostwick, supra*). We think it has been maintained in the provisions for the daughter.

The question remains whether distribution is to be made *per capita* or *per stirpes*. In April, 1920, at the termination of the trust, Mrs. Morrell's sister, who was then Mrs. Voronoff, was living. Her brother, Albert C. Bostwick, was dead, but he had five children, who survived. Both the referee and the Appellate Division included the brother's children in the class of next of kin. The referee limited them, however, to the share that would have been taken by their parent. The Appellate Division took the view that the division must be equal.

A stubborn rule of law bound the courts for many years to the holding that a gift to " issue " was to be treated as a gift *per capita*. The rule was often deplored (*Petry v. Petry*, 186 App. Div. 738; 227 N. Y. 621; *Matter of Union Trust Co.*, 170 App. Div. 176; 219 N. Y. 537). It yielded to " a very faint glimpse of a different intention " (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168, 174; *Matter of Union Trust Co., supra*). It was followed, when there was no escape, in submission to authority. A recent amendment of the Decedent Estate Law (L. 1921, ch. 379; Decedent Estate Law, [Cons. Laws, ch. 13], § 47a) has wiped it out for the future. The court is now asked to perpetuate and enlarge what has been felt to be a mischief by holding that there is a like implication of a *per capita* division upon a gift to " heirs " or to " next of kin." We are not yet committed to the declaration of such a rule. On the contrary, whenever we have been invited to declare it, we have refused the invitation, coupling our refusal with the statement that the question was still open. Thus, in *Woodward v. James* (115 N. Y. 346) there was a gift to " legal heirs." We found a direction in the will that the shares were to be apportioned according to the Statute of

Descents. This was held to import a stirpital division. We found it unnecessary to determine what the method of division would have been if this direction had been absent. " It may be that we should follow the rule prevailing in many other states, that a devise to heirs which compels a reference to a statute to ascertain who should take, makes the same statute the guide to the manner and proportion also " (115 N. Y. at p. 359). In *Bisson* v. *West Shore R. R. Co.* (143 N. Y. 125) the gift was to the testator's wife for life, remainder to his and his wife's heirs, " their heirs and assigns forever, share and share alike." We saw in this provision a purpose to create a single class with equality of interests. Rejecting a division by stocks because of the wording of the gift, we said at the same time that it was " a preferable construction when the context will permit." In the most recent case (*Matter of Barker*, 230 N. Y. 364), where there was a gift to " lawful heirs," we referred to the statute to determine, not only the members of the class, but also the extent and quality of their interests.

We think a gift to " heirs " or " next of kin " is the same in meaning and effect as one to " legal heirs " or " legal next of kin," and that one as much as the other imports a reference to the statute. This is the view that has prevailed in many other jurisdictions (*Allen* v. *Boardman*, 193 Mass. 284, 286, and cases there cited; *Daggett* v. *Slack*, 8 Metc. 450; *Richards* v. *Miller*, 62 Ill. 417; *Kirkpatrick* v. *Kirkpatrick*, 197 Ill. 144, 151; *Knutson* v. *Vidders*, 126 Ia. 511; *Bailey* v. *Bailey*, 25 Mich. 185; *Cook* v. *Catlin*, 25 Conn. 387; *Heath* v. *Bancroft*, 49 Conn. 220, 222; *Healy* v. *Healy*, 70 Conn. 467; *MacLean* v. *Williams*, 116 Ga. 257; *Matter of Swinburne*, 16 R. I. 208, 212; *Forrest* v. *Porch*, 100 Tenn. 391; cf. *Dwight* v. *Gibb*, 145 App. Div. 223, 228; *S. C.*, 150 App. Div. 573; affd., 208 N. Y. 153; *Armstrong* v. *Galusha*, 43 App. Div. 248, 257). We find no rule of property forbidding its adoption here. No doubt, decisions to the contrary

can be cited from the English courts. They go to the
extent of holding that upon a gift to next of kin, the
court will not refer to the statute even for the purpose
of defining the members of the class (2 Jarman Wills,
p. 107; 28 Halsbury's Laws of England, § 1387; *Withy* v.
*Mangles,* 10 Cl. & F. 215). The words "next of kin,"
it is said, do not mean "next of kin according to the
statute," but the relative or relatives nearest in blood
to the *propositus* (*Akers* v. *Sears,* 1896, 2 Ch. 802, 804;
*Halton* v. *Foster,* 3 Ch. App. 505). Upon a gift in that
form, brothers and sisters take to the exclusion of the
children of deceased brothers and sisters, though all would
share together if the definition were broadened to accord
with the definition of the statute (*Akers* v. *Sears, supra*).
Such a construction would exclude altogether the children
of Albert C. Bostwick, the son, and would give the
entire share to Mrs. Voronoff, the daughter. It is
significant that no one before us contends for such a
method of division. Even the English courts, though
in form adhering to their rule, have done so with avowed
reluctance (*Withy* v. *Mangles,* at p. 256), and, by every
refinement of distinction, have fought against applying it.
The slightest reference to the statute is held to be sufficient
evidence that the statute is to be followed in determining
the members of the class (Jarman, *supra;* Halsbury,
*supra.*) The line is not drawn there. A gift to next
of kin as a statutory class makes the statute, it is said,
a guide to determine not only the persons who are to
take, but the extent and manner of the taking (*Martin* v.
*Glover,* 1 Coll. 269; *Hutchinson* v. *National Refuges, etc.,
supra,* at pp. 822, 823; 28 Halsbury's Laws of England,
§ 1389). In becoming the guide for one purpose, it
becomes the guide for all.

We find no support in the decisions in New York for
the rule that the next of kin who will take under a will
are not the next of kin upon intestate succession. We
ought not to incorporate into our law a rule so discredited

in the jurisdiction of its origin. We have not done so yet. The English cases were cited and rejected in *Slosson* v. *Lynch* (43 Barb. 147). This court in *Tillman* v. *Davis* (95 N. Y. 17) adopted a definition assimilating membership in one class to membership in the other. "The proper primary signification of the words 'next of kin' is those related by blood, who take personal estate of one who dies intestate, and they bear the same relation to personal estate as the word 'heirs' does to real estate" (95 N. Y. at p. 24). We have made this breach at least in the English definition. Having gone so far, we are not to stop half-way. When once we reach the point of fitting the definition of the class to the definition of the statute, there is little left of the distinction between a gift to "next of kin" and one to "legal next of kin" or "next of kin under the law." If one form of gift imports a description of the interests as well as a description of the persons, so also do the others. The rule thus emerges that in the absence of clear tokens of a contrary intention, the statute is to be taken as the standard of division (*Allen* v. *Boardman*, 193 Mass. 284). The acceptance of this formula supplies a test of simple application. A testator is still free, if he pleases, to direct division upon other lines. Often it will happen that he has no intention one way or the other. At such times, a division according to the statute is more likely than any other to correspond with what he would have wished if the subject were one that he had thought about at all. "The statute of distribution governs in all cases where there is no will, and where there is one, and the testator's intention is in doubt, the statute is a safe guide" (*Lyon* v. *Acker*, 33 Conn. 222, 223).

We do not ignore the direction that the gift, if it passes to issue, is to be divided "share and share alike." The mandate is not repeated in connection with the gift to next of kin. We are asked to hold that repetition is implied. In some jurisdictions, a gift to issue with

a direction that division shall be equal, is read as equivalent to a direction that it shall be equal between stocks (*Hall* v. *Hall*, 140 Mass. 267; *Allen* v. *Boardman, supra; MacLean* v. *Williams, supra; Matter of Swinburne, supra*). In our own court, slight circumstances have been enough to uphold a like construction (*Matter of Farmers' Loan & Trust Co., supra,* at p. 174). We have little reason to believe that in following the *per capita* rule, we were giving effect to a purpose genuinely willed. What we did was to enforce a rule of property which from the use of certain words imputed to the testator a particular intention, whether present in his mind or not, unless, indeed, a contrary intention was in some other way disclosed. A rule obeyed with reluctance under the compulsion of authority, is not to be stretched by implication. The extension becomes even more anomalous to-day, now that the rule itself has been abrogated by statute for wills to take effect hereafter. The author of this will may have wished to impose restrictions upon one gift and not upon the other. In all likelihood, he simply failed to think the subject through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law. The question in such circumstances is one not of intention in the proper sense, but of the legal implications of one formula or another. When the problem of division is thus viewed as one of legal implications, there is seen to be a difference between a gift to heirs and to next of kin on the one hand, and a gift to issue on the other. The difference is that the one imports, and the other does not, or at any rate not so clearly, the adoption by the testator of a statutory plan. The appeal is to different standards. The word "issue," viewed alone, is neutral in its suggestion of division upon one plan or another. The words "heirs" and "next of kin" take their color and connotation from the schedules of the statute.

The judgment of the Appellate Division should be reversed, and the judgment entered upon the referee's report affirmed, with costs to all parties filing briefs in this court payable out of the estate.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.